UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES FOREMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No. 18-cv-01375-BLF<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND; GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 24, 30] |

This case involves a consumer's right to authorize his bank to transfer funds electronically to third parties through what is aptly named an "electronic fund transfer." Such transfers are governed by the Electronic Fund Transfer Act ("EFTA"), 15. U.S.C. § 1693. If a consumer has authorized a financial institution to transfer funds on his behalf, the EFTA provides the consumer the right to "stop payment" of those preauthorized transfers—that is, to withdraw his authorization. *Id.* § 1693e. In practice, in order to stop payment, the consumer may be required by his financial institution to pay what is known as a "stop-payment fee." Plaintiffs James Foreman and Alvin Moody allege that Defendant Bank of America, N.A. ("BOA") charges such a fee. Plaintiffs contend that BOA's stop-payment fee, in combination with several other alleged impositions to stopping payments, violates the EFTA and California's Unfair Competition Law.

Before the Court is Plaintiffs' motion for leave to amend their First Amended Complaint (ECF 30) and BOA's motion to dismiss the First Amended Complaint (ECF 24). For the reasons stated on the record at the hearing on the motion to dismiss, and because leave to amend should be freely given, the Court GRANTS Plaintiffs' motion for leave to amend. The Second Amended Complaint, attached to Plaintiffs' motion for leave to amend (at ECF 30-1), is thus the operative pleading here. Because BOA's motion to dismiss applies equally to the Second Amended

1  Complaint, the Court CONSTRUES Defendant's motion to dismiss the First Amended Complaint
2  to be a motion to dismiss the Second Amended Complaint.

For the reasons that follow, the motion to dismiss the Second Amended Complaint is GRANTED WITH LEAVE TO AMEND. Plaintiffs shall file an amended complaint **on or before January 10, 2019**.

## I. BACKGROUND[1]

Plaintiffs James Foreman and Alvin Moody each have a bank account with Defendant Bank of America, N.A. ("BOA"). Second Am. Compl. ("SAC") ¶ 28. Through its deposit agreement, BOA, like many financial institutions, allows its customers to authorize recurring electronic funds transfers ("EFTs") from their checking accounts to various third parties, to effectuate, for example, the payment of monthly bills. *Id.* ¶¶ 1, 27. Under the Electronic Fund Transfer Act ("EFTA"), 15. U.S.C. § 1693, BOA is required to allow consumers to withdraw their authorizations for EFTs. *Id.* ¶¶ 21–22. Accordingly, BOA allows its customers to stop such payments.

However, in order to stop the payments, the customer must first satisfy certain requirements imposed by BOA in its deposit agreement. First, BOA requires the customer to pay a $30 "stop-payment fee" ("SPF"). *Id.* ¶¶ 3–4, 30. Every customer must pay this fee, regardless of his or her means. *Id.* ¶ 5. Second, it requires the customers to notify the third-party recipient of the EFT that the customer has withdrawn his or her authorization for the EFT. *Id.* ¶ 31. And third, it requires the customer to provide BOA with the exact details of the pre-authorized transfer, down to the penny, before it will stop the payment. *Id.*

Plaintiff James Foreman authorized BOA to transfer funds from his checking account to pay a third-party lender, who he alleges was an illegal, predatory lender. *Id.* ¶¶ 34–38. When he learned in November 2017 that the lender's tactics were illegal, he told BOA he wanted to stop payment, and BOA required Foreman to pay the $30 fee. *Id.* ¶¶ 39–40. Because he was caught up

---

[1] Plaintiffs' well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

in what he alleges was an illegal lending scheme and needed to escape the "illegal debt trap," he paid the fee. *Id.* ¶ 40. This happened to him more than once. *Id.* ¶ 41.

Plaintiff Alvin Moody is an indigent consumer whose monthly income comes mostly from Social Security benefits. *Id.* ¶¶ 43–44. In December 2017, he went to BOA and attempted to stop a recurring EFT to his insurance company, in accordance with the terms and conditions of his account. *Id.* ¶ 45. He also paid the $30 fee. *Id.* ¶ 46. BOA, however, failed to stop the EFT, and the EFT was effectuated on January 3, 2018. BOA then charged Moody a $35 overdraft fee because he had insufficient funds in his account for the transfer. *Id.* ¶ 48.

Plaintiffs allege that the SPF provision, in tandem with the other requirements BOA imposes before it will allow a customer to stop payments, "impede[], hinder[], or deter[] consumers" from stopping payments, in violation of their rights under the EFTA, which seeks to protect individual consumer rights in relation to electronic fund transfers. Specifically, Plaintiffs claim that BOA violates 15 U.S.C. § 1693e(a), which sets forth the means by which a consumer can stop payments. *Id.* ¶¶ 30, 42, 61–67. Likewise, they claim that BOA's deposit agreement violates 15 U.S.C. § 1693*l*, which states that "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by" the EFTA. *Id.* ¶¶ 33, 68–73. Lastly, Plaintiffs claim that BOA's violations of the EFTA constitute violations of California's Unfair Competition Law's unlawful prong. *Id.* ¶¶ 74–82.

Plaintiffs bring their causes of action under the EFTA on behalf of a putative class of "[a]ll holders of a [BOA] checking account who, within the applicable statute of limitations, paid one or more SPFs to stop a recurring EFT." *Id.* ¶ 49. And they bring their UCL claim on behalf of a subclass of holders of BOA accounts in California. *Id.*

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it

3

1  "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

BOA challenges the claims in the SAC on two key fronts: (1) the SAC does not allege EFTA violations based on the $30 stop-payment fee; and (2) Plaintiff Moody fails to state a claim under the EFTA because he does not plausibly allege he complied with the prerequisites for stopping payment. The Court addresses each argument in turn.

### A. Imposition of Stop-Payment Fees

On its face, the SAC seemingly asserts two theories of liability under the EFTA. First, Plaintiffs appear to claim that *any* imposition of a SPF violates the EFTA. For example, the common questions in the class allegations include "[w]hether [BOA]'s assessment of SPFs on recurring EFTs violated the EFTA" and "[w]hether [BOA]'s assessment of SPFs hinders, impedes, and deters consumers from exercising their right under the EFTA and 15 U.S.C. § 1693e(a) to stop payment on EFTs . . . ." SAC ¶ 54(b), (c). Likewise, in claiming BOA violated § 1693e, Plaintiffs allege that "[i]n violation of 15 U.S.C. § 1693e(a), and as a common practice, [BOA] assesses a $30 'stop-payment fee' when a consumer instructs [BOA] to stop a recurring EFT." *Id.* ¶ 63; *see also* Opp. at 1, ECF 27 ("The Bank's Fee is an unlawful imposition on consumers' federal right to stop preauthorized electronic fund transfers.").

Second, Plaintiffs appear to claim that the imposition of a $30 fee unlawfully hinders the rights of *certain* consumers—namely, those for whom $30 is unduly burdensome because of their limited means. For example, the SAC contains allegations emphasizing Plaintiff Foreman's attempt to get out from under predatory loans, SAC ¶¶ 34–38, and notes that Plaintiff Moody is indigent and suffered an overdraft fee because of BOA's alleged failure to stop his payment, *id.* ¶¶ 43–44. *See also* Opp. at 1 (arguing that BOA violates the law "by requiring consumers—especially indigent ones—to pay a $30 stop-payment fee").

Despite these allegations, Plaintiffs argued at the hearing on the motion to dismiss that they

4

do not assert either of these theories. *See* Hearing Tr. 14: 3–6 (disavowing claim that "any fee" violates the EFTA); *id.* 13:16–18, ECF 47 (disavowing any claim that there is a "sliding scale" of fees "based on an ability to pay" that would violate the EFTA). *Contra* Opp. at 13 ("The Bank violates § 1693e when it uses the Fee to impede, hinder, and deter consumers—especially indigent ones—from exercising their right to stop payment of an EFT."). Instead, they ostensibly seek to assert a theory not readily apparent on the face of the SAC—namely, that the $30 fee *in combination with* the required notice to the third-party payee and the requirement that the stop-payment notice to BOA be technically precise impede consumers to such a degree that BOA violates the EFTA as a matter of law.[2] *See* Hearing Tr. 4:21–5:1, 8:25–9:7; *see also* SAC ¶¶ 33, 69 (referring to the "contractual provisions," not just the $30 SPF, as violating the EFTA). That this theory is not discernible from the face of the SAC is just one of its problems.

Another, albeit related, problem, is that Plaintiffs' support of this theory is internally inconsistent. They argue that BOA's impositions to stopping payments are contrary to the EFTA on its face. The EFTA states that a consumer may stop payment by doing two things: (1) "notifying the financial institution . . . up to three business days preceding the scheduled date of the transfer; and (2) if the stop payment request is made orally, the "financial institution may require written confirmation to be provided to it within fourteen days." 15 U.S.C. § 1693e. Plaintiffs seemingly argue that this provision imposes two *and only two* requirements on a consumer for stopping payments, such that additional requirements "not contemplated by the statute" impede a consumer's ability to exercise his right to stop payment. *See* Hearing Tr. at 5:14–17; *see also* Opp. at 4, 13. But this argument does not support Plaintiffs' espoused theory. Instead, this argument supports the theory that *any* imposition not expressly enumerated in the statute violates the statute. That is, it supports the theory that *any* stop-payment fee, be it $1 or

---

[2] In its motion, BOA understandably rebuts the SAC as if it claims that *any* SPF violates the EFTA. *See, e.g.*, Mot. at 2, ECF 24 ("He challenges only the fact that he was charged a $30 fee."). And in its reply, it tackles the second purported theory—that there is some sliding scale of fees a bank can charge based on the consumers' means. *See* Reply at 1, ECF 29 ("Plaintiffs argue that the [EFTA] should be interpreted to prohibit stop-payment fees if, on a case-by-case basis, the fees" impede stopping the payments). With Plaintiffs' theory more clearly articulated, these arguments are, unfortunately, somewhat beside the point.

5

$30, violates the statute, because SPFs are not contemplated by the statute. Yet Plaintiffs expressly disclaim this theory.

Even assuming that Plaintiffs' theory were clear from the face of the SAC and their arguments more clearly bolstered that theory, the SAC fails for an additional reason. Plaintiffs do not allege facts to plausibly state a valid claim that these impositions violate the EFTA as a matter of law. This is so because Plaintiffs do not allege facts that they personally were impeded, hindered, or delayed by the $30 SPF (much less the two other impositions). Indeed, each Plaintiff alleges that he *paid* the fee, seemingly without delay. SAC ¶¶ 40–41 (Foreman); *id.* ¶ 46 (Moody). Though Plaintiffs argue that "the $30 Fee 'inherently [preclude[d] Plaintiff[s] from stopping payment],'" Opp. at 15 (quoting *Simone v. M & M Fitness LLC*, No. cv-16-01229-PHX, 2017 WL 1318012, at *3 (D. Ariz. Apr. 10 2017)), they do not allege such preclusion. There are no allegations that would allow this Court to determine that these impositions worked in tandem to impede or hinder Plaintiffs' rights to stop payments, much less that these impositions together are somehow so drastic that they hinder consumers as a matter of law. There is simply no alleged causal link between BOA's impositions and Plaintiffs' abilities to exercise their rights to stop payments under the EFTA.

Thus, Plaintiffs fail to state a claim under the EFTA. Because violations of the EFTA serve as the predicate to Plaintiffs' UCL claim, that claim fails as well.[3]

### B. Moody's Claim

In contrast to Plaintiffs' opaque allegations regarding BOA's impositions, Plaintiff Moody alleges facts that could state a claim under the EFTA. He alleges that he requested BOA stop a payment and complied with BOA's requirements to do so, but that BOA did not stop the payment. However, Plaintiff Moody nowhere actually asserts an individual claim based on these allegations. Each of the three asserted causes of action are brought on behalf of the putative classes and relate specifically to BOA's impositions, not to its failure to process requests. To validly state a claim, Plaintiff Moody must first bring such a claim.

---

[3] Because Plaintiffs fail to state a claim under the UCL, the Court need not reach BOA's argument that the National Banking Act preempts the UCL in this case. *See* Mot. at 9–12.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for leave to amend the first amended complaint and CONSTRUES BOA's motion to dismiss to be a motion to dismiss the second amended complaint. The Court GRANTS WITH LEAVE TO AMEND the motion to dismiss. Plaintiffs' amended complaint is due **on or before January 10, 2019**.

**IT IS SO ORDERED.**

Dated: December 6, 2018

BETH LABSON FREEMAN
United States District Judge