1  Jeffrey D. Kaliel (CA Bar No. 238293)
   Sophia G. Gold (CA Bar No. 307971)
2  jkaliel@kalielpllc.com
3  sgold@kalielpllc.com
   KALIEL PLLC
4  1875 Connecticut Ave., NW, 10th Floor
5  Washington, D.C.  20009
   (202) 350-4783
6
   -and-
7
   Bryan S. Gowdy (*Pro Hac Vice*)
8  bgowdy@appellate-firm.com
   filings@appellate-firm.com
9  CREED & GOWDY, P.A.
10 865 May Street
   Jacksonville, Florida 32204
11 (904) 350-0075

12
13 *Attorneys for Plaintiffs and the Putative Class*

14          **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
15                **(San Jose Division)**

16 JAMES FOREMAN and ALVIN
17 MOODY, on behalf of themselves and
   all others similarly situated,
18                                              **CASE NO. 5:18-cv-01375-BLF**
                        Plaintiffs,
19                                              **THIRD AMENDED CLASS**
20 v.                                           **ACTION COMPLAINT**

21 BANK OF AMERICA, N.A.,

22                        Defendant.

23
24
25
26
27
28

Plaintiffs JAMES FOREMAN and ALVIN MOODY, on behalf of themselves and all others similarly situated, sue Defendant, BANK OF AMERICA, N.A. ("BANA" or the "Bank"), and allege as follows:

## INTRODUCTION

1.      This lawsuit challenges: (1) BANA's practice of profiting from and hindering its customers' statutory right to revoke authorization for recurring EFTs (the class allegations herein); and (2) BANA's practice of failing to execute stop-payment orders even after a customer pays the stop payment fee (Plaintiff Moody's individual claim herein). Both of these practices independently violate the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693, *et seq.*, (the "EFTA").

2.      In 1978, Congress passed the EFTA, establishing a "Bill of Rights" for consumers with respect to electronic funds transfers ("EFTs"). *See, e.g.*, Roland E. Brandel & Eustace A. Olliff III, *The Electronic Fund Transfer Act: A Primer*, 40 OHIO ST. L.J. 531, 532 n.6 (1979). The EFTA was implemented by the Federal Reserve Board in "Regulation E." *See* 12 C.F.R. § 1005.10(c).

3.      Among the important rights established by the EFTA and Regulation E is the right for consumers who preauthorize EFTs from their checking accounts—for anything from gym memberships to periodic loan payments—to require a bank to immediately cease the EFTs upon timely notice that a consumer no longer authorizes them. *See* 15 U.S.C. § 1693e(a) ("A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer.").

4.      BANA routinely violates this statutory right.

5.      BANA imposes a large fee before a consumer can cancel a recurring EFT. Specifically, BANA charges accountholders a $30 stop-payment fee ("SPF") for exercising the right to withdraw authorization for a recurring EFT.

6.      SPFs are not tied to any actual costs incurred by the Bank in processing a stop payment order. Rather, the SPFs are used to generate profit for the Bank and to

1  deter consumers from exercising their statutory right to cancel a previously

2  authorized EFT.

3      7.    BANA's practice of charging SPFs violates the EFTA under three

4  alternative theories, which are pled herein as class claims under both the EFTA

5  (Counts I-III) and correspondingly under California law (Counts IV-VI).

6      8.    Class Theory #1:  *Per se* prohibition on all SPFs. By charging the SPFs,

7  BANA imposes conditions on the right to cancel recurring EFTs that are not

8  permitted by the EFTA. The EFTA grants consumers the right to "stop payment of a

9  preauthorized [EFT]" subject to only two conditions: (1) the consumer must give the

10  financial institution notice at least three business days before the scheduled date of

11  the EFT; and, (2) if notice is given orally, the financial institution may require the

12  consumer to provide written confirmation within fourteen days of the oral

13  notification. 15 U.S.C. § 1693e(a).

14      9.    Under the canon of statutory interpretation known as "*expressio unius*

15  *est exclusio alterius*" ("the express mention of one thing excludes all others"),[1] by

16  listing the foregoing two conditions, Congress prohibited financial institutions from

17  imposing additional conditions on the right to cancel preauthorized EFTs. Therefore,

18  by conditioning cancellation of a recurring EFT on payment of SPFs, BANA violates

19  the EFTA.

20      10.   Class Theory #2:  Prohibition on SPFs that exceed the costs of

21  processing stop-payment orders. Alternatively and second, BANA's $30 SPF violates

22  the EFTA because it is not tied to any actual costs and, in fact, grossly exceeds the

23  costs of processing stop-payment orders. Banks are authorized to impose fees on

24  banking services upon consideration of specific factors, including (1) the bank's

25  actual costs incurred in providing the service and (2) deterrence of misuse of banking

26  services, such as overdrawing an account. *See* 12 C.F.R. § 7.4002(2). BANA imposes

27

28  [1] This canon is also known as the "Negative-Implication Canon." *See* BRYAN A. GARNER & ANTONIN SCALIA, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (1st ed. 2012).

the SPFs as deterrence, but, because consumers have a statutory right to revoke authorization for recurring EFTs, stop-payment orders are not "misuse," and deterrence of misuse cannot be a proper justification for imposing the SPFs. The SPFs should therefore be justified only by reference to actual costs, but BANA's $30 SPFs grossly exceed its costs in processing stop-payment orders. Thus, the SPFs are improper and violate consumers' rights under the EFTA. Indeed, giving BANA the unfettered right to impose any SPFs it wishes would allow BANA to thwart the important rights Congress granted to consumers by enacting the EFTA.

11.   Theory #3:  Prohibition on SPFs that impede and hinder a consumer's exercise of the right to stop payment. Alternatively and third, BANA's $30 SPFs violate the EFTA because they impede, hinder, and deter consumers from exercising their right to revoke authorization for recurring EFTs under the EFTA. Because BANA's SPFs are not tied to any actual costs and, in fact, grossly exceed the costs of processing stop-payment orders, the sole purpose of BANA's $30 SPF is to impede, hinder, and deter consumers from exercising their right to stop payments under the EFTA. This is precisely what happened to Plaintiff Foreman. Plaintiff Foreman would have exercised his right to stop payment several months prior to when he did had BANA not charged a $30 SPF. By charging a $30 SPF, BANA impeded, hindered, and deterred Plaintiff Foreman and other putative class members from exercising their rights under the EFTA.

12.   Moreover, each of foregoing theories is supported by 15 U.S.C. § 1693*l*. Under this statute, the EFTA expressly prohibits agreements purporting to waive any right or cause of action created by the EFTA. Therefore, to the extent provisions in BANA's deposit agreements purport to authorize the illegal SPFs, the deposit agreements violate the EFTA, and the violating provisions in the agreements are invalid and unenforceable.

13.   To the extent BANA's actions described above violate federal law, the same actions constitute violations of California's Unfair Competition Law (the

1    "UCL"), which makes it a violation of California law to engage in any unlawful

2    business act or practice. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq.*

3         14.    <u>Plaintiff Moody's separate individual claim:  BANA's failure to honor a</u>

4    <u>stop-payment order.</u> In addition to the foregoing two theories that pertain to BANA's

5    unlawful charging of SPFs and that apply on a class-wide basis, Plaintiffs also allege

6    that BANA frequently violates the EFTA in a different manner (though not in a

7    manner that is being pled on class-wide basis). Specifically, BANA frequently fails to

8    execute stop-payment orders in a timely fashion even after a customer has paid the

9    SPF. This is what occurred to Plaintiff Moody: He attempted to exercise his right to

10   stop payment on a preauthorized EFT, but even though BANA promised to stop the

11   payment—and charged him the illegal SPF for doing so—BANA failed to honor his

12   timely stop-payment order and, as a result, charged him an *additional* overdraft fee

13   caused by the very same EFT he had tried to cancel. Plaintiff Moody brings this

14   additional claim (Count VII) individually and solely on his own behalf.

15        15.    By this action, Plaintiffs, individually and on behalf of the putative

16   classes, seek: (1) actual and statutory damages pursuant to 15 U.S.C. § 1693m;

17   (2) restitution and injunctive relief under the UCL; (3) all recoverable costs and

18   attorneys' fees; (4) a declaration that any provisions of their deposit agreements with

19   BANA purporting to authorize SPFs violate the EFTA are illegal and unenforceable;

20   and (5) an injunction restraining BANA from the illegal conduct alleged herein.

21        16.    In addition to the foregoing relief, Plaintiff Moody seeks all damages

22   proximately caused by BANA's failure to stop payment of his preauthorized EFT as

23   instructed pursuant to 15 U.S.C. § 1693h(a)(3) on his individual claim under the

24   EFTA (Count VII).

25                         **PARTIES**

26        17.    Plaintiff James Foreman is a natural person residing in this District and

27   Division. He is also a "consumer," as defined by the EFTA, 15 U.S.C. § 1693a(6).

28

18.   Plaintiff Alvin Moody is a natural person residing in the state of Georgia. He is also a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

19.   Bank of America, N.A. is a "financial institution" as defined and governed by the EFTA, 15 U.S.C. § 1693a(9), with its headquarters in Charlotte, North Carolina.

## JURISDICTION AND VENUE

20.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g). In addition, this Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005 because Plaintiff Foreman is a citizen of California, Plaintiff Moody is a citizen of Georgia, and Defendant is a citizen of North Carolina, so that at least one member of the class is "a citizen of a State different from any defendant" in this litigation. Additionally, Plaintiffs allege that the matter in controversy is in excess of $5,000,000. Finally, Plaintiffs allege that "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

21.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BANA regularly does business in this District, and a substantial part of the events giving rise to Plaintiff Foreman's claims occurred in this District.

## FACTUAL ALLEGATIONS
### EFTs and the EFTA

22.   An EFT is the electronic transfer of money from one bank account to another, either within a single financial institution or across multiple institutions, via computer-based systems, without the direct intervention of bank staff. Consumers commonly use EFTs to pay insurance and utility bills, loan payments, and personal-services memberships, such as gyms.

23.   The EFTA gives consumers the right to stop payment of EFTs.

24.     Congress enacted the EFTA in 1978 with the "primary objective" to provide rights to individual consumers with respect to electronic fund and remittance transfers. 15 U.S.C. § 1693.

25.     The EFTA "sets minimum safeguards for consumers who arrange for regular payments (such as insurance premiums or utility bills) to be deducted automatically from their bank accounts." S. Rep. No. 95-915, at 13 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9403, 9415. These safeguards protect the consumer's control over his or her own money and accounts. *Id.*

26.     Under the EFTA, stopping preauthorized withdrawals is meant to be as easy as initiating them. Accordingly, "[a] consumer is given the right to stop payment on a preauthorized transfer by notifying his financial institution orally or in writing up to three business days before the scheduled date of transfer. In the case of an oral notice, the financial institution may require written confirmation within fourteen days." 15 U.S.C. § 1693e(a); *see also* 12 C.F.R. Pt. 1005, Supp. I, cmt. 10(c).

27.     "The financial institution must honor an oral stop-payment order made at least three business days before a scheduled debit. If the debit item is resubmitted, the institution must continue to honor the stop-payment order (for example, by suspending all subsequent payments to the payee-originator until the consumer notifies the institution that payments should resume)." 12 C.F.R. Pt. 1005, Supp. I, cmt. 10(c).

28.     "Once a financial institution has been notified that the consumer's authorization is no longer valid, it must block all future payments for the particular debit transmitted by the designated payee-originator." *Id.* Because the EFTs are considered unauthorized once the consumer has provided notice to the financial institution, the financial institution is liable for any subsequent EFTs. *See* 15 U.S.C. § 1693g; *see also id*. § 1693a(12) (defining the term "unauthorized electronic fund transfer").

29.   "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by [the EFTA]." 15 U.S.C. § 1693*l*.

### BANA Routinely Violates EFTA Rights to Stop Recurring EFTs

30.   According to the National Consumer Law Center, "[a]dvocates around the country routinely hear from people whose financial institution refused their repeated requests to stop recurring payments to payday lenders. The financial institution often claims that there is nothing it can do to stop the debits or that the consumer is required to stop the payment by going through the lender and revoking authorization for the debit. While Regulation E permits financial institutions to require written confirmation from the customer that authorization has been revoked, the law is clear that the financial institution must enter the initial stop-payment order based on an oral request." September 29, 2014 Letter from National Consumer Law Center to The Hon. Janet L. Yellen, Chairwoman Board of Governors of the Federal Reserve System, The Hon. Richard Cordray, Director Consumer Financial Protection Bureau, The Hon. Tom Curry, Comptroller Office of the Comptroller of the Currency, The Hon. Martin Gruenberg, Chairman Federal Deposit Insurance Corporation, The Hon. Debbie Matz, Chairwoman National Credit Union Administration, Jan Estep, President and Chief Executive Officer NACHA—The Electronic Payments Association ("NCLC Letter") (available at https://www.nclc.org/images/pdf/banking_and_payment_systems/regulator_rdfi_issu es_letter_9292014.pdf).

31.   According to the NCLC Letter, "Unauthorized charges should be blocked or reversed *without charge*. But if a consumer is attempting to block future unauthorized charges as opposed to reversing one that already occurred, financial institutions often charge stop-payment fees. Consumers also may not know to contest the payments as unauthorized and may simply ask that the payments be stopped.

Even if the consumer says that the payment is illegal and unauthorized, the bank may still charge a stop payment fee." *Id.* (emphasis added).

32.     Moreover, under Regulation E, "a consumer may initiate a stop-payment order by an oral request." *Id.* The plain language of 15 U.S.C. § 1693e(a) grants this right to a consumer. "The [financial institution] may ask the consumer to follow up with a written request and to confirm that the consumer has revoked the payee's authorization. The initial stop-payment order may expire in 14 days if the consumer does not follow up with the requested information. But the [financial institution] may not refuse to honor the initial oral stop-payment order pending receipt of that information. Indeed, the requirement that financial institutions stop payments would be superfluous if consumers could, or were required to, effectively stop payments with the payee directly." *Id.* While the EFTA "do[es] not specifically address stop-payment fees," any "fees that are so high as to inhibit the right to stop payment should be viewed as violating" a consumer's right under the EFTA to stop payment. *Id.* "Such fees are also potentially unfair, deceptive or abusive." *Id.*

### BANA's Deposit Agreements Impose a $30 SPF in Violation of the Right to Cancel EFTs under the EFTA

33.     BANA imposes SPFs on cancellations of recurring EFTs pursuant to provisions in its deposit agreements. These provisions, along with others, violate the consumer's rights to stop payment on an EFT. They therefore violate the EFTA and are unenforceable.

34.     Plaintiffs and BANA have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in BANA's deposit agreement and related documentation. BANA has previously filed with this Court and authenticated its deposit agreements for the pertinent periods and related documentation. (Dkts. 24-1, 24-2, 24-3, 24-4, 24-5.) Plaintiffs do not contest the authenticity of these materials. They are attached hereto as Exhibits 1 to 5.

35.     In the applicable deposit agreements, BANA acknowledges EFTs "are governed by the Regulation E, which implements the federal [EFTA]." (Dkt. 24-2 at 34; Dkt. 24-3 at 34.)

36.     BANA's deposit agreements also state, "We [BANA] may charge you [consumer] a fee for each stop payment order you give." (Dkt. 24-2 at 32; Dkt. 24-3 at 52.) This provision violates the EFTA by (1) imposing an unlawful condition on the right to withdraw authorization for an EFT, (2) imposing a fee grossly in excess of the actual costs to cancel a previously authorized EFT; and (3) impeding hindering, or deterring consumers from exercising their rights under the EFTA. *See* 15 U.S.C. §§ 1693e(a).

37.     These provisions further violate the EFTA by purporting to waive rights conferred by the EFTA. *See id.* § 1693*l*.

38.     The deposit agreements have other provisions that impose unlawful conditions on the right to withdraw authorization for EFTs and that are also designed to impede, hinder, or deter consumers from exercising this right. For example, the agreements tell consumers they "must notify the payee that [they] have withdrawn [their] authorization for any preauthorized (recurring) transaction." (Dkt. 24-2 at 32; Dkt. 24-3 at 3). The EFTA imposes no such conditions on cancellation of an EFT and therefore, by negative implication, prohibits financial institutions from imposing such conditions.

39.     In addition, the deposit agreements purport to authorize BANA to refuse to process an EFT—after receiving a timely, valid stop-payment order—if the order lists the wrong amount, even by just one penny, for the EFT. (Dkt. 24-2 at 31-32; Dkt. 24-3 at 31-32; *accord* Exs. 2, 3.)

40.     The following is what BANA's deposit agreements state verbatim about stop-payment orders:

**Placing A Stop Payment Order** We may accept a written or oral stop payment order from any person who has a right to withdraw funds from

the account. We may require you to complete a form authorizing the order. You must give us sufficient notice and information so that we have a reasonable opportunity both to verify that the item is unpaid and to act on your request. We may charge you a fee for each stop payment order and each renewal of the order.

We use a computer system to identify items. Therefore, to place a stop payment order on a check or draft, we need specific information to process the request, such as the account number, the routing number, the name of the party to whom the item was made payable, the item number and the exact amount of the item — in dollars and cents. If you give us the wrong amount (even one penny off) or the wrong item number, we may pay the item. We may also require the date of the item, the name of the person who signed or authorized the item, and the name of the party to whom the item was made payable. We may use only a portion of the required information to identify an item. Please see the Additional Information about Stop Payments for Preauthorized (Recurring) Electronic Funds Transfers section for information about how to stop those types of payments.

In some cases, we may pay an item even if an order is in effect. For example, if one of our financial centers, without notice of your request, pays a check that you have asked us to stop, we may still pay the check.

A stop payment order generally expires after six months. However, we may, in our sole discretion, elect to honor a stop payment order for a longer period of time without notice to you. If you want the order to continue after six months, you must ask us to renew the order. Each request for a renewal is treated as a new order. If you want the order to expire in less than six months, you must ask us to cancel the order on or after the date you want it to expire. We may accept a written or oral instruction to cancel the order. Your request to cancel the order is not effective until we have a reasonable opportunity to act on it. We cancel the order automatically when the account on which the item is drawn is closed. If the item is presented to us for payment after the stop payment order expires, we may pay the item.

If we pay an item subject to a valid and timely stop payment order, we may be liable to you if you had a legal right to stop payment and you establish that you suffered a loss because of the payment. Our liability, if any, is limited to the actual loss suffered, up to the amount of the item. You must prove the loss to our satisfaction. We are not liable to you for any special, incidental or consequential loss or damage of any kind.

**Additional Information about Stop Payments for Preauthorized (Recurring) Electronic Funds Transfers** If you have told us in advance to make regular payments out of your account (such as recurring debit transactions) or if you have authorized someone else to debit your account through the ACH system, you can stop these payments.

Here's how: Call us at 1.800.432.1000 or write us at Bank of America Customer Service, P.O. Box 25118, Tampa, FL 33622.

You must notify us in time to receive your request at least three business days before the payment order is scheduled to be made. If you call us to stop the payment, we may require you to confirm the request in writing. If you do not notify us in writing, we may remove the stop payment after 14 days. We may charge you a fee for each stop payment order you give.

Stop payment orders for preauthorized (recurring) payments do not expire without action on your part, including recurring debit card and ACH transactions. Should your debit card number change, please contact us to place a new stop payment on the transaction on your new card.

To place a stop payment order on an ACH debit, we may require you to provide your name and telephone number, the type of account (checking or savings), and the exact company name used by the sender of the ACH debit, and some of the other information listed under *Placing a Stop Payment Order*. You can obtain the company name used by your sender from your statement by looking at a prior ACH debit from this sender that posted to your account.

If you do not know the amount of the ACH debit, we may still be able to place the stop payment order based on the company name of the sender, but this may stop all ACH items from this sender. If you give us the wrong company name or if the sender changes the company name, we may pay the item.

To place a stop payment on other preauthorized (recurring) transactions, you must give us the identifying information we request. You may be able to give us a specific expiration date for certain stop payment orders if you choose to do so.

You must notify the payee that you have withdrawn your authorization for any preauthorized (recurring) transaction.

*Notice of Varying Amounts*
If these regular payments may vary in amount, the person you are going to pay will tell you, 10 days before each payment, when it will be made and how much it will be. You may choose instead to receive this type of notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.

*Liability for Failure to Stop Payment*
If you order us to stop a preauthorized payment three business days or more before the transfer is scheduled, and you have given us all of the information we requested, and we do not stop the payment, we will be liable for your losses or damages directly caused by our failure to stop the payment.

(Dkt. 24-2 at 31-32; Dkt. 24-3 at 31-32; *accord* Exs. 2, 3.)

41.     BANA's fee schedule in its deposit agreement states the following with respect to SPFs:

| Stop Payment Fee | $30.00 each request | • Bank of America Interest Checking and Advantage accounts plus Preferred rewards customers qualify for a waiver of this fee.<br>• There is no charge to place a stop payment on a recurring debit card transaction. |
|---|---|---|

(Dkt. 24-4 at 14; Dkt. 24-5 at 14.)

42.     These contractual provisions violate 15 U.S.C. § 1693*l*, which "prohibits agreements that preclude consumers from exercising rights conferred under EFTA." *Simone v. M & M Fitness LLC*, No. 16-cv-01229, 2017 WL 1318012, at *2 (D. Ariz. Apr. 10, 2017). "[T]he use of such an agreement by any party is an actionable violation." *Id.* Even if an agreement "does not explicitly preclude [a consumer] from stopping payment," an agreement violates § 1693*l* if it "hinder[s] consumers' ability to exercise their rights as Congress intended" under the EFTA, because the EFTA "precludes such hindrance—no matter how slight—and does not expressly require a showing of specific harm." *Id.* at *3; *see also Baldukas v. B & R Check Holders, Inc.*, No. 12-cv-01330, 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012), *adopted by* 2013 WL 950847 (D. Colo. Mar. 8, 2013) (holding that the EFTA prohibits an agreement

1  that imposes conditions on stop-payment orders that vary from the conditions

2  authorized by the EFTA).

3  **Plaintiff Foreman's Experience**

4  43.   Plaintiff Foreman was the victim of an illegal payday-loan debt trap.

5  44.   Plaintiff Foreman took out payday loans with illegal predatory lenders,

6  including MyPaydayLoan.com.

7  45.   A payday loan is a short-term (typically a matter of weeks), high-fee,

8  closed-end loan, traditionally made to consumers in anticipation of an upcoming

9  paycheck. Payday loans and high-cost installment loans trap consumers in debts they

10  cannot afford.

11  46.   A borrower obtaining an online payday loan must usually enter into an

12  "Authorization to Initiate ACH Transactions" with the lender, which permits the

13  lender to "initiate" credit and debit entries on the loan. Plaintiff Foreman was

14  required to enter into such an authorization to obtain his payday loan.

15  47.   As a part of his loan agreements with the predatory lenders, including

16  MyPaydayLoan.com, Plaintiff Foreman provided a preauthorization for the predatory

17  lenders to electronically withdraw payments from his BANA checking account.

18  48.   After learning that the loans were illegal and thus invalid in California,

19  Plaintiff Foreman contemplated exercising his right to stop payment under the EFTA.

20  However, upon learning that BANA charges a $30 SPF, Plaintiff Foreman delayed

21  exercising his right to stop payment for several months—all the while continuing to

22  pay the illegal payday loan payments.

23  49.   In August 2017, Plaintiff Foreman paid the $30 SPF and exercised his

24  right to stop payment under the EFTA—several months after he initially intended to

25  do so.

26  50.   Plaintiff Foreman again paid a $30 SPF to stop payment to another

27  predatory internet loan in November 2017. This was another violation the EFTA and

28  the UCL.

51.     BANA's policy of charging $30 SPFs, as set forth in its deposit agreements, imposes unlawful conditions on the statutory right to cancel an EFT and has the purpose and effect of impeding, hindering, and deterring consumers from exercising their rights under EFTA. By charging a $30 SPF, BANA impeded, hindered, and deterred Plaintiff Foreman and other putative class members from exercising their rights under the EFTA. Plaintiff Foreman would have exercised his right to stop payment several months prior to when he did had BANA not charged a $30 SPF. This policy provides BANA significant and unjust revenues for doing nothing more than performing a statutory duty.

52.     Plaintiff Foreman would exercise his right to stop payment in the future if BANA eliminates or substantially reduces the $30 SPF.

### Plaintiff Moody's Experience

53.     Plaintiff Alvin Moody is an indigent consumer living close to the federal poverty line.

54.     Nearly all of Plaintiff Moody's monthly income comes from Social Security benefits.

55.     On December 11, 2017, Plaintiff Moody went into a BANA branch in Union City, Georgia to execute a stop payment order on a recurring EFT to his insurance company. To the best of his ability, he executed a stop-payment order in accordance with the terms and conditions of his account.

56.     Plaintiff Moody paid BANA the illegal $30 SPF on December 11, 2017.

57.     Despite Plaintiff Moody's notice that he had withdrawn authorization for the recurring EFT to his insurer and payment of the illegal SPF, BANA failed to stop the EFT to Plaintiff Moody's insurer, and the EFT was eventually processed without Moody's authorization on January 3, 2018.

58.     As a result of the unauthorized EFT on January 3, 2018—which BANA promised to stop but did not—BANA assessed Plaintiff Moody an *additional* $35 overdraft fee.

59.    Plaintiff Moody would exercise his right to stop payment in the future if BANA eliminates or substantially reduces the $30 SPF.

## CLASS ALLEGATIONS

60.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed class is defined as:

> All holders of a BANA checking account who, within the applicable statute of limitations, paid one or more SPFs to stop a recurring EFT (the "SPF Class").

In addition, the proposed California subclass is defined as follows:

> All holders of a BANA checking account in California who, within the applicable statute of limitations, paid one or more SPFs to stop a recurring EFT (the "California SPF Class").

The classes are collectively referred to as the "Classes."

61.    Excluded from the Classes are BANA; its subsidiaries and affiliates; its officers, directors and members of their immediate families; any entity in which defendant has a controlling interest; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and the members of their immediate families.

62.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes, if necessary, before this Court determines whether certification is appropriate.

63.    This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

64.    _Numerosity under Fed. R. Civ. P. 23(a)(1)_. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of

thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to BANA's records. BANA has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

65. *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Classes relating to BANA's business practices challenged herein, and those common questions predominate over any questions affecting only individual members of the Classes. The common questions include but are not limited to:

a) Whether BANA improperly assessed SPFs;

b) Whether BANA's assessment of SPFs on recurring EFTs violates the EFTA;

c) Whether BANA's assessment of SPFs hinders, impedes, and deters consumers from exercising their right under the EFTA and 15 U.S.C. § 1693e(a) to stop payment on EFTs, and whether this assessment is an unlawful obstacle or hurdle to this consumer right in violation of the EFTA;

d) Whether the provisions in BANA's deposit agreement requiring consumers to pay SPFs before BANA will honor a stop-payment order, along with other provisions in the agreement, violate the EFTA and 15 U.S.C. § 1693*l*;

e) Whether the same provisions in BANA's deposit agreement are enforceable under the EFTA and 15 U.S.C. §1693*l*;

f) Whether BANA's assessment of SPFs violates California's UCL; and

g) Whether Plaintiffs and other members of the Classes have sustained damages as a result of BANA's conduct.

66. *Typicality under Fed. R. Civ. P. 23(a)(3)*. Plaintiffs' claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practice by BANA, as described herein.

67.     *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4).* Plaintiffs are adequate representatives of the Classes in that they have a BANA checking account and have suffered damages as a result of BANA's conduct. In addition:

a)     Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)     There is no hostility of interest between Plaintiffs and the unnamed members of the Classes;

c)     Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d)     Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

68.     *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Classes as set forth in the "commonality" allegation above predominate over any individual issues. Accordingly, the "commonality" allegations are restated and incorporated herein by reference.

69.     *Superiority under Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of the claim of each individual member of the Classes is very small relative to the complexity of the litigation, and since the financial resources of BANA are enormous, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses, and BANA's misconduct will proceed without remedy. In addition, even if members of the Classes themselves could afford individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.

1   Individualized litigation would also create the potential for inconsistent or

2   contradictory rulings. By contrast, a class action presents far fewer management

3   difficulties, allows claims to be heard which might otherwise go unheard because of

4   the relative expense of bringing individual lawsuits, and provides the benefits of

5   adjudication, economies of scale, and comprehensive supervision by a single court.

6       70.     *Fed. R. Civ. P. 23(b)(2)*. Plaintiffs seek a judicial declaration that the

7   provisions in BANA's deposit agreement allowing BANA to charge its customers a

8   $30 SPF when they exercise their rights under the EFTA, along with other contractual

9   provisions, violate 15 U.S.C. §§ 1693e(a), 1693*l* and are therefore invalid and

10  unenforceable. Additionally, Plaintiffs seek an injunction enjoining BANA's practice

11  of charging a $30 SPF pursuant to its deposit agreement and further enjoining

12  BANA's enforcement of its deposit agreement in a manner that impedes, hinders, and

13  deters consumers like Plaintiffs from exercising their EFTA rights. By charging

14  consumers a $30 SPF pursuant to its standard deposit agreement, BANA has acted or

15  refused to act on grounds that applying generally to the class such that final injunctive

16  relief or corresponding declaratory relief is appropriate respecting the Classes as a

17  whole.

18      71.     All conditions precedent to bringing this action have been satisfied or

19  waived.

**COUNT ONE: Violation of the EFTA (15 U.S.C. § 1693m)**
**Per se *prohibition on all SPFs***
**(Brought by Plaintiffs Foreman and Moody Individually**
**and on Behalf of the SPF Class)**

23      72.     Plaintiffs incorporate by reference each of the allegations set forth in the

24  preceding paragraphs 1 through 71 as if fully set forth herein.

25      73.     As alleged above, Plaintiffs and the putative SPF Class members

26  attempted to stop a debit on their BANA accounts by notifying BANA that they had

27  withdrawn authorization for EFTs to a particular company.

28

74.     Consistent with its policies and common practice, BANA assessed a $30 SPF on Plaintiffs and the putative SPF Class members before it would honor their instructions to cancel a recurring EFT.

75.     Under the canon of statutory interpretation "*expressio unius est exclusio alterius*," by specifying two conditions for the cancellation of a preauthorized EFT, the EFTA prohibits financial institutions from imposing additional conditions by negative implication. BANA's policy of conditioning the cancellation of a preauthorized EFT on payment of a SPF therefore violates the EFTA. *See* 15 U.S.C. § 1693e(a).

76.     In addition, by purporting to authorize imposition of an SPF, BANA's deposit agreements attempted to require Plaintiffs and the putative SPF Class members to waive their rights under the EFTA. BANA's deposit agreements therefore violate § 1693*l* of the EFTA.

77.     As a result of these violations, Plaintiffs and the putative SPF Class members suffered concrete and particularized harms including being required to pay illegal fees.

78.     BANA's violations of the EFTA are intentional and designed to generate profit for BANA and to deter customers from exercising their right under the EFTA to cancel previously authorized EFTs.

79.     Accordingly, BANA is liable to Plaintiffs and the putative SPF Class members for any actual damages, statutory damages, attorney's fees, and costs. 15 U.S.C. § 1693m.

80.     In addition, pursuant to 28 U.S.C. § 2201, Plaintiffs and the putative SPF Class members are entitled to and seek a judicial declaration that BANA's policy of charging SPFs violates 15 U.S.C. § 1693e(a) and that BANA's deposit agreements purporting to authorize SPFs violate 15 U.S.C. § 1693*l*. Plaintiffs and the putative SPF Class members are further entitled to and seek an injunction enjoining BANA

1   from charging SPFs and from including provisions authorizing SPFs in its deposit

2   agreements or attempting to enforce such provisions.

3   

**COUNT TWO: Violation of the EFTA (15 U.S.C. § 1693m)**
***Prohibition on SPFs that exceed the costs of processing stop-payment orders***
**(Brought by Plaintiffs Foreman and Moody Individually**
**and on Behalf of the SPF Class)**

4

5

6   81.     Plaintiffs incorporate by reference each of the allegations set forth in the

7   preceding paragraphs 1 through 71 as if fully set forth herein.

8   82.     As alleged above, Plaintiffs and the putative SPF Class members

9   attempted to stop a debit on their BANA accounts by notifying BANA that they had

10  withdrawn authorization for EFTs to a particular company.

11  83.     Consistent with its policies and common practice, BANA assessed a $30

12  SPF on Plaintiffs and the putative SPF Class members before it would honor their

13  instructions to cancel a recurring EFT.

14  84.     The amount of the $30 SPF is not tied to any actual costs incurred by

15  BANA to cancel preauthorized EFT and, in fact, grossly exceeds any such costs.

16  BANA's policy of requiring payment of a $30 SPF for the cancellation of a

17  preauthorized EFT therefore violates the EFTA. *See* 15 U.S.C. § 1693e(a). In

18  addition, by purporting to authorize imposition of a $30 SPF, BANA's deposit

19  agreements attempted to require plaintiffs and the putative SPF Class members to

20  waive their rights under the EFTA. BANA's deposit agreements therefore violate

21  § 1693*l* of the EFTA.

22  85.     As a result of these violations, Plaintiffs and the putative SPF Class

23  members suffered concrete and particularized harms including being required to pay

24  illegal fees.

25  86.     BANA's violations of the EFTA are intentional and designed to generate

26  profit for BANA and to deter customers from exercising their right under the EFTA

27  to cancel previously authorized EFTs.

28

87.     Accordingly, BANA is liable to Plaintiffs and the putative SPF Class members for any actual damages, statutory damages, attorney's fees, and costs. 15 U.S.C. § 1693m.

88.     In addition, pursuant to 28 U.S.C. § 2201, Plaintiffs and the putative SPF Class members are entitled to and seek a judicial declaration that BANA's policy of charging a $30 SPFs violates 15 U.S.C. § 1693e(a) and that BANA's deposit agreements purporting to authorize SPFs violate 15 U.S.C. § 1693*l*. Plaintiffs and the putative SPF Class members are further entitled to and seek an injunction enjoining BANA from charging $30 SPFs and from including provisions authorizing $30 SPFs in its deposit agreement or attempting to enforce such provisions.

<u>COUNT THREE: Violation of the EFTA (15 U.S.C. § 1693m)</u>
*<u>Prohibition on SPFs that impede and hinder a consumer's</u>*
*<u>exercise of his or her right to stop payment</u>*
**(Brought by Plaintiffs Foreman and Moody Individually**
**and on Behalf of the SPF Class)**

89.     Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs 1 through 71 as if fully set forth herein.

90.     As alleged above, Plaintiffs and the putative SPF Class members attempted to stop a debit on their BANA accounts by notifying BANA that they had withdrawn authorization for EFTs to a particular company.

91.     Consistent with its policies and common practice, BANA assessed a $30 SPF on Plaintiffs and the putative SPF Class members before it would honor their instructions to cancel a recurring EFT.

92.     BANA's policy of requiring payment of a $30 SPF for the cancellation of a preauthorized EFT impedes, hinders, and deters Plaintiffs and other consumers in the SPF Class from exercising their right to stop payment of an EFT. This policy thus constitutes a violation of the EFTA. *See* 15 U.S.C. §§ 1693e(a), 1693*l*.

93.     Plaintiff Foreman was deterred from exercising his right to stop payment under the EFTA by BANA's $30 SPF. Plaintiff Foreman would have exercised his

1  right to stop payment several months prior to when he did had BANA not charged a

2  $30 SPF for doing so.

3      94.    In addition, by purporting to authorize imposition of a $30 SPF,

4  BANA's deposit agreements attempt to require its customers to waive their rights

5  under the EFTA. BANA's deposit agreements therefore violate § 1693*l* of the EFTA.

6      95.    As a result of these violations, Plaintiffs and the putative SPF Class

7  members suffered concrete and particularized harms including being required to pay

8  illegal fees.

9      96.    BANA's violations of the EFTA are intentional and designed to generate

10  profit for BANA and to deter customers from exercising their right under the EFTA

11  to cancel previously authorized EFTs.

12      97.    Accordingly, BANA is liable to Plaintiffs and the putative SPF Class

13  members for any actual damages, statutory damages, attorney's fees, and costs. 15

14  U.S.C. § 1693m.

15      98.    In addition, pursuant to 28 U.S.C. § 2201, Plaintiffs and the putative SPF

16  Class members are entitled to and seek a judicial declaration that BANA's policy of

17  charging a $30 SPFs violates 15 U.S.C. § 1693e(a) and that BANA's deposit

18  agreement purporting to authorize SPFs violate 15 U.S.C. § 1693*l*. Plaintiffs and the

19  putative SPF Class members are further entitled to and seek an injunction enjoining

20  BANA from charging $30 SPFs and from including provisions authorizing $30 SPFs

21  in its deposit agreement or attempting to enforce such provisions.

22  **COUNT FOUR: Violation of the UCL (Cal. Bus. & Prof. Code § 17204)**
   **Per se *prohibition on all SPFs***

23  **(On behalf of Plaintiff Foreman individually and the California SPF Class)**

24      99.    Plaintiff Foreman incorporates by reference each of the allegations set

25  forth in the preceding paragraphs 1 through 71 and 72 through 80 as if fully set forth

26  herein.

27      100.    BANA's conduct described herein violates California's UCL. *See* Cal.

28  Bus. & Prof. Code §§ 17200, *et seq*.

101.   The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language.

102.   The UCL defines "unfair competition" to include any "any unlawful . . . business act or practice." Accordingly, this provision encompasses acts and practices proscribed by any other law, including the EFTA, and makes violations of those laws "unfair competition" that is independently actionable under the UCL.

103.   As alleged in Count One above, BANA has violated the EFTA by requiring payment of an SPF for its customers to cancel a previously authorized EFT. The EFTA sets forth two conditions on a consumer's right to cancel a previously authorized EFT and therefore, by negative implication, prohibits financial institutions imposing additional conditions, such as payment of an SPF. *See* 15 U.S.C. § 1693e(a). BANA has further violated the EFTA by including provisions in its deposit agreements purporting to require its customers to waive rights under the EFTA. *See id.* § 1693*l*. These actions are "unlawful" for purposes of the UCL's prohibition on unfair competition.

104.   BANA's conduct was not motivated by any business or economic need or rationale. The harm and adverse impact of BANA's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

105.   BANA's conduct was substantially injurious to consumers in that their accounts have been subject to unauthorized EFTs, and they have been forced to pay illegal SPFs in order to exercise their rights under the EFTA.

106.   As a result of BANA's violations of the UCL, Plaintiff Foreman and the members of the California SPF Class have paid and will continue to pay illegal SPFs and have thus suffered and will continue to suffer actual damages. Plaintiff Foreman

1  and the members of the California SPF Class seek restitution of all funds acquired by

2  means of the unlawful practices set forth herein.

3        107.   Additionally, Plaintiff Foreman and the California SPF Class are entitled

4  to and seek a judicial declaration that BANA's conduct violates the UCL. Plaintiff

5  Foreman and the California SPF Class are further entitled to and seek an injunction

6  enjoining BANA from continuing to engage in the unlawful conduct alleged herein.

7        **COUNT FIVE: Violation of the UCL (Cal. Bus. & Prof. Code § 17204)**
       *Prohibition on SPFs that exceed the costs of processing stop-payment orders*
8      **(On behalf of Plaintiff Foreman individually and the California SPF Class)**

9        108.   Plaintiff Foreman incorporates by reference each of the allegations set

10  forth in the preceding paragraphs 1 through 71 and 81 through 88 as if fully set forth

11  herein

12        109.   BANA's conduct described herein violates California's UCL. *See* Cal.

13  Bus. & Prof. Code §§ 17200, *et seq.*

14        110.   The UCL prohibits and provides civil remedies for unfair competition.

15  Its purpose is to protect both consumers and competitors by promoting fair

16  competition in commercial markets for goods and services. In service of that purpose,

17  the California Legislature framed the UCL's substantive provisions in broad,

18  sweeping language.

19        111.   The UCL defines "unfair competition" to include any "any unlawful . . .

20  business act or practice." Accordingly, this provision thus encompasses acts and

21  practices proscribed by any other law, including the EFTA, and makes violations of

22  those laws "unfair competition" that is independently actionable under the UCL.

23        112.   As alleged in Count Two above, BANA has violated the EFTA by

24  requiring payment of a $30 SPF for its customers to cancel a previously authorized

25  EFT. The amount of the $30 SPF is not tied to any actual costs incurred by BANA to

26  cancel preauthorized EFT and, in fact, grossly exceeds any such costs. BANA's

27  policy of requiring payment of a $30 SPF for the cancellation of a preauthorized EFT

28  therefore violates the EFTA. *See* 15 U.S.C. § 1693e(a). BANA has further violated

25

the EFTA by including provisions in its deposit agreements purporting to require its customers to waive rights under the EFTA. *See id.* § 1693*l*. These actions are "unlawful" for purposes of the UCL's prohibition on unfair competition.

113.   BANA's conduct was not motivated by any business or economic need or rationale. The harm and adverse impact of BANA's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

114.   BANA's conduct was substantially injurious to consumers in that their accounts have been subject to unauthorized EFTs, and they have been forced to pay illegal SPFs in order to exercise their rights under the EFTA.

115.   As a result of BANA's violations of the UCL, Plaintiff Foreman and members of the California SPF Class have paid and will continue to pay illegal SPFs and have thus suffered and will continue to suffer actual damages. Plaintiff Foreman and the California SPF Class seek restitution of all funds acquired by means of the unlawful practices set forth herein.

116.   Additionally, Plaintiff Foreman and the California SPF Class are entitled to and seek a judicial declaration that BANA's conduct violates the UCL. Plaintiff Foreman and the California SPF Class are further entitled to and seek an injunction enjoining BANA from continuing to engage in the unlawful conduct alleged herein.

## <u>COUNT SIX: Violation of the UCL (Cal. Bus. & Prof. Code § 17204)</u>
### *Prohibition on SPFs that impede and hinder a consumer's exercise of his or her right to stop payment*
**(On behalf of Plaintiff Foreman Individually and the California SPF Class)**

117.   Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs 1 through 71 and 89 through 98 as if fully set forth herein.

118.   BANA's conduct described herein violates California's UCL. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*.

119.   The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair

1  competition in commercial markets for goods and services. In service of that purpose,

2  the California Legislature framed the UCL's substantive provisions in broad,

3  sweeping language.

4      120.   The UCL defines "unfair competition" to include any "any unlawful . . .

5  business act or practice." Accordingly, this provision thus encompasses acts and

6  practices proscribed by any other law, including the EFTA, and makes violations of

7  those laws "unfair competition" that is independently actionable under the UCL.

8      121.   As alleged in Count Three above, BANA has violated the EFTA by

9  imposing an SPF which has the purpose and effect of hindering, impeding, and

10 deterring consumers from exercising their right to stop payment under the EFTA.

11 BANA's policy of requiring payment of a $30 SPF for the cancellation of a

12 preauthorized EFT therefore violates the EFTA. *See* 15 U.S.C. §§ 1693e(a), 1693*l*.

13     122.   Plaintiff Foreman was deterred from exercising his right to stop payment

14 under the EFTA by BANA's $30 SPF. Plaintiff Foreman would have exercised his

15 right to stop payment several months prior to when he did had BANA not charged a

16 $30 SPF for doing so. BANA's policy of requiring payment of a $30 SPF for the

17 cancellation of a preauthorized EFT impedes, hinders, and deters Plaintiff Foreman

18 and other consumers in the California SPF Class from exercising their right to stop

19 payment of an EFT. This policy thus constitutes a violation of the EFTA. *See* 15

20 U.S.C. §§ 1693e(a), 1693*l*.

21     123.   BANA has further violated the EFTA by including provisions in its

22 deposit agreements purporting to require its customers to waive rights under the

23 EFTA. *See id.* § 1693*l*. These actions are "unlawful" for purposes of the UCL's

24 prohibition on unfair competition.

25     124.   BANA's conduct was not motivated by any business or economic need

26 or rationale. The harm and adverse impact of BANA's conduct on members of the

27 general public was neither outweighed nor justified by any legitimate reasons,

28 justifications, or motives.

125.   BANA's conduct was substantially injurious to consumers in that their accounts have been subject to unauthorized EFTs, and they have been forced to pay illegal SPFs in order to exercise their rights under the EFTA.

126.   As a result of BANA's violations of the UCL, Plaintiff Foreman and the members of the California SPF Class have paid and will continue to pay illegal SPFs and have thus suffered and will continue to suffer actual damages. Plaintiff Foreman and the California SPF Class seek restitution of all funds acquired by means of the unlawful practices set forth herein.

127.   Additionally, Plaintiff Foreman and the California SPF Class are entitled to and seek a judicial declaration that BANA's conduct violates the UCL. Plaintiff Foreman and the California SPF Class are further entitled to and seek an injunction enjoining BANA from continuing to engage in the unlawful conduct alleged herein.

## COUNT SEVEN: Violation of the EFTA (15 U.S.C. § 1693h)
### *Wrongful failure to cancel an EFT*
### (On behalf of Plaintiff Moody only)

128.   Plaintiff Moody incorporates by reference each of the allegations set forth in the preceding paragraphs 1 through 71 as if fully set forth herein.

129.   On December 11, 2017, Plaintiff Moody executed a stop payment order on a recurring EFT to his insurance company. Plaintiff Moody executed his stop-payment order to the best of his ability and, under the circumstances, BANA was reasonably notified that Moody had withdrawn authorization for the previously scheduled recurring EFT to his insurer.

130.   In addition to providing sufficient notice under the EFTA to cancel the recurring EFT to his insurer, Plaintiff Moody also paid BANA an illegal $30 SPF on December 11, 2017.

131.   Despite Plaintiff Moody's timely notice and payment of the SPF, BANA failed to stop the EFT to Plaintiff' Moody's insurer, and the EFT was eventually processed without Moody's authorization on January 3, 2018.

132.    BANA's failure to cancel the EFT despite Plaintiff's Moody's timely notice violated Plaintiff Moody's rights under the EFTA. *See* 15 U.S.C. § 1693e(a).

133.    As a result of the unauthorized EFT on January 3, 2018, Plaintiff Moody's account became overdrawn, and BANA assessed Plaintiff Moody an overdraft fee of $35, in addition to the $30 SPF he had already paid.

134.    In addition, by purporting to allow BANA to refuse to honor a timely, valid stop-payment order if the order lists the wrong amount for the EFT by even a penny (Dkt. 24-2 at 31-32; Dkt. 24-3 at 31-32; *accord* Exs. 2, 3), BANA has attempted to require its customers to waive their rights under the EFTA. BANA's deposit agreements thus violate § 1693*l* of the EFTA.

135.    As a result of these violations, Plaintiff Moody suffered concrete and particularized harms including being required to pay illegal fees.

136.    BANA's violations of the EFTA are intentional and designed to generate profit for BANA and to deter customers from exercising their right under the EFTA to cancel previously authorized EFTs.

137.    Accordingly, BANA is liable to Plaintiff Moody for all damages proximately caused by its failure to stop his preauthorized EFTs in accordance with his instructions, and attorney's fees and costs. 15 U.S.C. § 1693h(a)(3).

138.    In addition, pursuant to 28 U.S.C. § 2201, Plaintiff Moody is entitled to and seeks a judicial declaration that BANA's policy of refusing to honor timely notices to cancel a previously authorized EFT violates and the provisions of BANA's deposit agreements purporting to authorize this conduct violate the EFTA. *See* 15 U.S.C. §§ 1693e(a), 1693*l*. Plaintiff Moody is further entitled to and seeks an injunction enjoining BANA's illegal conduct and prohibiting BANA from including provisions authorizing this conduct in its deposit agreement or attempting to enforce such provisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the members of the Classes demand a jury trial on all claims so triable and judgment against Defendant as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representative and Plaintiffs' counsel be appointed Class Counsel;

B.    Declaring that Defendant's policies and practices in charging the SPFs, and enforcing other provisions of its deposit agreements, violate the EFTA (specifically, 15 U.S.C. §§ 1693e(a), 1693*l*) and the UCL because these policies:

    i.    impose conditions on cancellation of recurring EFTs that are prohibited by the EFTA; or, in the alternative,

    ii.    charge fees for the cancellation of recurring EFTs that are in excess of the actual costs to BANA to cancel the EFTs; or, in the alternative,

    iii.    have the purpose and effect of impeding, hindering, and deterring consumers from exercising their EFTA right to stop payment of an EFT;

C.    Ordering BANA to immediately cease the wrongful conduct set forth above and enjoining BANA from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.    Restitution of all fees paid to BANA by Plaintiff Foreman and the California SPF Class as a result of the wrongs alleged herein in an amount to be determined at trial, pursuant to the UCL;

E.    Actual, punitive, and statutory damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1693m;

F.    Proximate damages caused by BANA's failure to stop Plaintiff Moody's preauthorized EFTs in accordance with his instructions to be determined at trial, pursuant to 15 U.S.C. § 1693h;

G.    Pre-judgment interest at the maximum rate permitted by applicable law;

H.   Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

I.   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: January 10, 2019

Respectfully submitted,

/s/ *Bryan S. Gowdy*

Bryan S. Gowdy (*Pro Hac Vice*)
bgowdy@appellate-firm.com
filings@appellate-firm.com
CREED & GOWDY, P.A.
865 May Street
Jacksonville, Florida 32204
(904) 350-0075

*-and-*

Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia G. Gold (CA Bar No. 307971)
jkaliel@kalielpllc.com
sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783

*Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 10, 2019, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

/s/ *Bryan S. Gowdy*

Attorney