1   MATTHEW W. CLOSE (S.B. #188570)
    mclose@omm.com
2   BRITTANY ROGERS (S.B. #274432)
    brogers@omm.com
3   O'MELVENY & MYERS LLP
    400 South Hope Street, 18th Floor
4   Los Angeles, California  90071-2899
    Telephone:     (213) 430-6000
5   Facsimile:     (213) 430-6407

6   DANIELLE N. OAKLEY (S.B. #246295)
    doakley@omm.com
7   O'MELVENY & MYERS LLP
    610 Newport Center Drive, 17th Floor
8   Newport Beach, California  92660-6429
    Telephone:     (949) 823-6900
9   Facsimile:     (949) 823-6994

10  Attorneys for Defendant
    Bank of America, N.A.

11

12              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13                        **SAN JOSE**

14

15  JAMES FOREMAN et al., on behalf of himself      Case No. 5:18-CV-01375-BLF
    and all others similarly situated,
16                                                   **DEFENDANT BANK OF AMERICA,**
                          Plaintiff,                 **N.A.'S REPLY IN SUPPORT OF ITS**
17                                                   **MOTION TO DISMISS THE THIRD**
           v.                                        **AMENDED COMPLAINT PURSUANT**
18                                                   **TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)**
    BANK OF AMERICA, N.A.,
19                                                   Hearing date:   July 25, 2019
                          Defendant.                 Time:           9:00 a.m.
20                                                   Place:          Courtroom 3
                                                     Judge:          Hon. Beth Labson Freeman
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.   PLAINTIFFS LACK STANDING TO PURSUE COUNTS TWO AND
     THREE BECAUSE THEY EXERCISED THEIR RIGHTS UNDER THE
     EFTA. ........................................................................................................... 2

II.  THE TAC FAILS TO ALLEGE ANY SUBSTANTIVE EFTA
     VIOLATION. ................................................................................................ 4

     A.   The EFTA Does Not Establish a *Per Se* Prohibition On All Stop-
          Payment Fees. ...................................................................................... 4

          1.   Nothing in the EFTA's Text Bars Stop-Payment Fees. .................. 4

          2.   Ninth Circuit Precedent Precludes Plaintiffs' Claims. .................... 5

     B.   This Court Does Not Have Jurisdiction to Adjudicate Compliance
          with an OCC Regulation. ..................................................................... 7

     C.   Nothing in BANA's Deposit Agreement Forced Plaintiffs to Waive
          Their Right to Place a Stop-Payment Request. .................................... 9

III. MOODY HAS NOT PLEADED AN INDIVIDUAL EFTA CLAIM
     BASED ON AN ALLEGED FAILURE TO HONOR A STOP-PAYMENT
     ORDER. ...................................................................................................... 10

IV.  FOREMAN'S UCL CLAIMS CHALLENGING STOP-PAYMENT FEES
     SHOULD BE DISMISSED. ........................................................................ 11

     A.   The National Bank Act Preempts Foreman's UCL Claims. ..................... 11

     B.   Foreman Cannot State a UCL "Unlawful" Claim Based on Stop-
          payment Fees Because He Has Not Pleaded a Predicate EFTA
          Violation. .......................................................................................... 12

CONCLUSION ............................................................................................................... 13

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Bank of Am. v. City & County of San Francisco,*
    309 F.3d 551 (9th Cir. 2002)............................................................................... passim

5

*Bank One, Utah v. Guttau,*
    190 F.3d 844 (8th Cir. 1999)........................................................................................ 12

6

7

*Barnett Bank of Marion Cty., N.A. v. Nelson,*
    517 U.S. 25 (1996)...................................................................................................... 11

8

9

*Bultemeyer v. Fitness All., LLC,*
    2014 WL 667585 (D. Ariz. Feb. 20, 2014) ................................................................. 5

10

*Burns v. First Am. Bank,*
    2006 WL 3754820 (N.D. Ill. Dec. 19, 2006) ............................................................. 3

11

12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ............................................................................................... 12

13

14

*City of Miami v. Bank of Am. Corp.,*
    800 F.3d 1262 (11th Cir. 2015), *vacated and remanded, Bank of Am. Corp. v.
    City of Miami, Fla*., 137 S. Ct. 1296 (2017) .............................................................. 8

15

16

*Deming v. Merrill Lynch & Co.,*
    528 F. App'x 775 (9th Cir. 2013) ........................................................................ 1, 7, 8

17

18

*Doucet v. Int'l Hair Inst., LLC,*
    2017 WL 5563987 (S.D. Cal. Nov. 20, 2017) ........................................................... 2

19

*Farrish v. Navy Fed. Credit Union,*
    2017 WL 4418416 (D. Md. Oct. 5, 2017)................................................................. 10

20

21

*Gutierrez v. Wells Fargo Bank, NA,*
    704 F.3d 712 (9th Cir. 2012)....................................................................................... 8

22

23

*Howse v. DirecTV, LLC,*
    221 F. Supp. 3d 1339 (M.D. Fla. 2016). .................................................................... 9

24

*In re W. States Wholesale Nat. Gas Antitrust Litig.,*
    715 F.3d 716 (9th Cir. 2013)....................................................................................... 5

25

26

*Ingels v. Westwood One Broad. Servs., Inc.,*
    129 Cal. App. 4th 1050 (2005).................................................................................. 12

27

28

*Kashanchi v. Texas Commerce Med. Bank, N.A.,*
    703 F.2d 936 (5th Cir. 1983).................................................................................. 6, 7

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lindblom v. Santander Consumer USA Inc.*,
  2018 WL 500347 (E.D. Cal. Jan. 22, 2018)................................................. 3

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010)......................................................... 8, 11

*Metro One Telecommunications, Inc. v. Comm'r*,
  704 F.3d 1057 (9th Cir. 2012)............................................................ 4

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*,
  290 F.3d 1055 (9th Cir. 2002)........................................................ 12, 13

*Sandoz Inc. v. Amgen Inc.*,
  137 S. Ct. 1664 (2017)................................................................. 12

*Simone v. M & M Fitness LLC*,
  2017 WL 1318012 (D. Ariz. Apr. 10, 2017).............................................. 3, 9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)............................................................... 1, 3

*United States v. Williams*,
  376 F.3d 1048 (10th Cir. 2004)........................................................... 4

*Watters v. Wachovia Bank, N.A.*,
  550 U.S. 1 (2007)...................................................................... 11

*Williams v. Champs Auto Sales, Inc.*,
  2014 WL 6886546 (E.D. Mich. Dec. 4, 2014)................................................ 9

**Statutes**

12 U.S.C. § 24.............................................................................. 6

12 U.S.C. § 2610............................................................................ 6

15 U.S.C. § 1693c(a)(5)..................................................................... 5

15 U.S.C. § 1693h(a)(3)............................................................... 5, 10, 11

**Other Authorities**

Office of the Comptroller of the Currency, Interpretive Letter No. 1094,
  2008 WL 1775103 (Feb. 27, 2008)........................................................... 6

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

**Regulations**

4

12 C.F.R. § 34.4(a) ............................................................................................................. 11

5

12 C.F.R. § 7.4002(b)(2) ............................................................................................. 6, 8, 11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1

## INTRODUCTION

2   Plaintiffs offer no reason for this Court to depart from the detailed analysis it laid out

3   when it dismissed the SAC.  While the opposition clarifies that plaintiffs are now pursuing three

4   theories of liability in the TAC[1]—two of which they expressly abandoned in open court (Order,

5   4–5, ECF No. 50)—it confirms that all of those theories are contrary to the EFTA's text, Ninth

6   Circuit case law, and established industry practice.  Nothing in the EFTA creates a *per se* ban on

7   stop-payment fees, and plaintiffs have no answer to the fact that, in analyzing the EFTA's

8   legislative history, the Ninth Circuit held that regulating banking "fees is not the type of

9   consumer protection measure contemplated by the EFTA." *Bank of Am. v. City & County of San*

10  *Francisco*, 309 F.3d 551, 564 (9th Cir. 2002).  Similarly, Ninth Circuit case law forecloses

11  plaintiffs' theory that the EFTA prohibits stop-payment fees that exceed the costs of the

12  administrative services necessary to stop payments (however that might be defined and

13  measured).  Plaintiffs' claim is an impermissible effort to litigate whether BANA's fee complies

14  with OCC regulations that give banks discretion to set banking fees, which is an issue the Court

15  lacks jurisdiction to adjudicate. *See, e.g.*, *Deming v. Merrill Lynch & Co.*, 528 F. App'x 775, 778

16  (9th Cir. 2013) (holding that Article III challenges to a bank's compliance with OCC regulations,

17  are "fruitless because the regulation of a national bank's adherence to OCC regulations is within

18  the exclusive purview of the OCC").  Finally, plaintiffs' claim that the existence of a stop-

19  payment fee forced them to waive a right provided by the EFTA likewise finds no support in the

20  EFTA or elsewhere.  Plaintiffs admittedly exercised their right to stop payment.  (*See* Order, 6.)

21  This concession not only undermines plaintiffs' theories of EFTA liability, it also deprives them

22  of Article III standing to bring their claims because they have suffered no actual injury. *See*

23  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016).  Rather, they paid for and received a service

24  for which they bargained in their deposit agreements.

25   Plaintiffs' TAC and their opposition ask the Court to use the EFTA to invent a new

26  restriction on national banks and make unlawful a contractually authorized and fully disclosed

27

28
[1] The terms BANA defined in its original motion to dismiss (ECF No. 18) are used again in this brief.

1   banking fee.  But that restriction has no foundation in the EFTA.  As the Ninth Circuit explained,

2   "[t]he EFTA was enacted to prevent fraud, embezzlement, and unauthorized disclosure in

3   electronic fund transfers, ***not to regulate service fees charged by financial institutions***."  *See*

4   *Bank of Am.*, 309 F.3d at 564 (emphasis added).  This precedent is controlling.  As a result, the

5   Court should dismiss the TAC with prejudice.

6                                          <u>ARGUMENT</u>

7   **I.     PLAINTIFFS LACK STANDING TO PURSUE COUNTS TWO AND THREE
         BECAUSE THEY EXERCISED THEIR RIGHTS UNDER THE EFTA**.

8

9           Plaintiffs contend that the EFTA either prohibits all stop-payment fees or, in the

10  alternative, that it restricts stop-payment fees in some unspecified way if the fees "hinder[] . . .

11  customers' statutory right to revoke authorization for recurring EFTs."  (TAC ¶ 1.)  While count

12  one asserts that the EFTA imposes a *per se* prohibition on the stop-payment fees that plaintiffs

13  allegedly paid, their other two claims are rooted in the concept of hindrance and fail because

14  plaintiffs were not hindered in exercising their right to stop payment.  Specifically, count two

15  alleges that the stop-payment fee was too high and therefore impeded plaintiffs' right to stop

16  payments.  (*Id.* ¶¶ 81–88.)  Count three alleges that the stop-payment processing instructions and

17  $30 stop-payment fee violate the EFTA's anti-waiver provision by effectively forcing plaintiffs to

18  waive the right to stop payment.  (*Id.* ¶¶ 89–98.)  Plaintiffs' concession that they paid the stop-

19  payment fee and instructed BANA to stop payments (*id.* ¶¶ 50, 56), however, deprives them of

20  standing to bring either claim.

21          Standing "must be shown as to each claim and type of relief sought."  *Doucet v. Int'l Hair

22  Inst., LLC*, 2017 WL 5563987, at *2 (S.D. Cal. Nov. 20, 2017).  And as the Court explained in

23  dismissing the SAC, "[p]laintiffs do not allege facts that they personally were impeded, hindered,

24  or delayed by the $30 SPF (much less the other [terms of the deposit agreement])."  (Order, 6.)

25  Unless the EFTA prohibits all stop-payment fees, which it does not, plaintiffs lack standing

26  because they suffered no injury from being impeded, hindered, or delayed in their ability to stop

27  payments.

28          In their opposition, plaintiffs try to circumvent standing's fundamental precepts by

2

1   arguing that plaintiffs are excused from alleging a concrete injury since they seek statutory

2   damages, but that is not the law.  (Opp. 16.)  "Article III standing requires a concrete injury ***even***

3   ***in the context of a statutory violation***."  *Spokeo, Inc.*, 136 S. Ct. at 1549 (emphasis added).

4   Plaintiffs argue that two unpublished district court opinions—*Simone v. M & M Fitness LLC*,

5   2017 WL 1318012 (D. Ariz. Apr. 10, 2017) and *Burns v. First Am. Bank*, 2006 WL 3754820

6   (N.D. Ill. Dec. 19, 2006)—support their ability to maintain a claim for statutory damages without

7   suffering an injury.  But *Simone* did not address standing at all; it involved the substantive EFTA

8   question of whether a gym contract that expressly contradicted the terms of the EFTA violated the

9   statute's anti-waiver provision.  And *Burns* was decided 10 years before *Spokeo* and, in any

10  event, is inapposite.  In *Burns*, the court considered whether the defendant's violation of the

11  EFTA's ATM disclosure requirements required a showing that the plaintiffs were confused by the

12  disclosure to establish an actual injury.  In finding that no such showing was required, the court

13  reasoned that a defendant "may be held strictly liable for any non-compliance with the [EFTA's]

14  ***notice*** requirements."  *Burns*, 2006 WL 3754820 at *6 (emphasis added).  Here, plaintiffs do not

15  allege a violation of the EFTA's notice requirements.  Moreover, they fail to allege ***any*** EFTA

16  violation and thus, unlike in *Burns*, cannot use that non-existent violation as a basis for

17  establishing an actual injury.  In short, plaintiffs' authorities do not suggest that they have

18  standing to pursue claims for infringement of a right ***that they both exercised***.

19          Plaintiffs also cite *Lindblom v. Santander Consumer USA Inc*., 2018 WL 500347, at *5

20  (E.D. Cal. Jan. 22, 2018), for the proposition that paying a stop-payment fee creates standing.

21  But *Lindblom* did not involve claims like these, where plaintiffs challenge a fee that they paid,

22  while claiming that the same fee hindered or waived their ability to obtain the service for which

23  the fee was assessed.  *Lindblom* involved a speedpay fee that the plaintiffs paid 40 times.  *Id.* at

24  *2.  There, the plaintiffs challenged a debt collector's attempt to collect the fee, arguing that the

25  fee was unlawful and therefore not owed.  *Id.*  Plaintiffs' second and third counts here, by

26  contrast, depend on a showing that their right to stop payment under the EFTA was impaired by

27  the presence of a fee.  By definition, plaintiffs cannot do that where they paid the purportedly

28  hindering fee.  In other words, paying the fee is not a cause of plaintiffs' purported injury.

1    Accordingly, plaintiffs' second and third counts should be dismissed for lack of standing.

2    **II.      THE TAC FAILS TO ALLEGE ANY SUBSTANTIVE EFTA VIOLATION.**

3             **A.      The EFTA Does Not Establish a *Per Se* Prohibition On All Stop-Payment
                         Fees.**
4

5             Plaintiffs argue that the EFTA prohibits stop-payment fees because the statute's silence on

6    the subject somehow reflects congressional intent to regulate and ban fees that national banks can

7    charge their account holders.  This argument is so weak that plaintiffs previously abandoned it

8    when this Court pressed them on the issue.  (*See* Order, 5 (disavowing theory "that 'any fee'

9    violates the EFTA").)  Having done so, plaintiffs may not attempt to re-litigate the issue.  *See*

10   *United States v. Williams*, 376 F.3d 1048, 1051 (10th Cir. 2004) (observing that law of the case

11   doctrine precludes parties from re-arguing previously abandoned positions).  Plaintiffs' original

12   decision to disavow this argument was the right one, because both the text of the EFTA and Ninth

13   Circuit case law foreclose plaintiffs' new position.  *See Bank of Am.*, 309 F.3d at 564.

14                      **1.      *Nothing in the EFTA's Text Bars Stop-Payment Fees.***

15            Plaintiffs' position that the EFTA bans stop-payment fees is contrary to the text of the

16   EFTA, as well as all interpretive guidance and case law.  Nevertheless, plaintiffs argue that,

17   "[u]nder the canon of statutory interpretation '*expressio unius est exclusio alterius*,'" because

18   1693e requires a consumer to give a financial institution at least three-days' notice before the

19   scheduled transfer and written confirmation of the stop-payment order upon request from the

20   bank, by "negative implication" any other contractual term relating to stop-payment requests

21   violates the EFTA.  (TAC ¶ 75.)

22            First, there is no need to resort to statutory construction where, as here, the plain text of a

23   statute is clear, and here the EFTA contains no prohibition whatsoever on stop-payment fees.  *See*

24   *Metro One Telecommunications, Inc. v. Comm'r*, 704 F.3d 1057, 1063 (9th Cir. 2012) ("[W]here

25   the plain meaning rule has provided a clear answer, we do not need to look to other canons of

26   statutory construction.").  Congress knows how to prohibit various actions, like charging fees, and

27   it elected not to do so in the EFTA.  Moreover, the text of the EFTA itself expressly

28   acknowledges that the terms and conditions of the consumer's account (which here provide for a

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1   stop-payment fee) govern stop-payment requests, and therefore forecloses plaintiffs'

2   interpretation.  *See* 15 U.S.C. § 1693h(a)(3) (A financial institution may only be liable for "failure

3   to stop payment of a preauthorized transfer from a consumer's account" if the consumer

4   instructed the bank "to do so *in accordance with the terms and conditions of the account*."

5   (emphasis added)); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716,

6   731 (9th Cir. 2013) ("[S]tatutory provisions should not be read in isolation, and the meaning of a

7   statutory provision must be consistent with the structure of the statute of which it is a part.").

8           Under the plain language of section 1693c, banks are required to disclose the terms and

9   conditions governing "the consumer's right to stop payment of a preauthorized electronic fund

10  transfer and the procedure to initiate such a stop payment order."  15 U.S.C. § 1693c(a)(5); *see*

11  *also Bultemeyer v. Fitness All., LLC*, 2014 WL 667585, at *4 (D. Ariz. Feb. 20, 2014) ("The clear

12  purpose of this advance notice is to protect the consumer from unauthorized, fraudulent or

13  erroneous transfers, which allows the consumer an opportunity to stop payment in accordance

14  with the applicable laws *and procedures established by the consumer's financial institution*."

15  (emphasis added)).  Similarly, under section 1693h(a), a claim for "failure to stop payment of a

16  preauthorized transfer from a consumer's account" only arises when the consumer "instructed

17  [the financial institution] to do so *in accordance with the terms and conditions of the account*."

18  15 U.S.C. § 1693h(a)(3) (emphasis added).  Thus, to adopt plaintiffs' position and conclude that

19  the EFTA "prohibits financial institutions from imposing" contractual requirements beyond the

20  terms of section 1693e would be inconsistent with the express language of sections 1693c and

21  1693h acknowledging such contractual limitations.  The Court should not read such a conflict into

22  the text of the EFTA.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 731

23  (refusing to read a statute in a way that would have conflicted with congressional delineations

24  within the statute).

25                   **2.      *Ninth Circuit Precedent Precludes Plaintiffs' Claims.***

26          In *Bank of Am. v. City & County of San Francisco*, the Ninth Circuit concluded that

27  regulating banking fees was outside the EFTA's purview: the regulation of banking "fees is not

28  the type of consumer protection measure contemplated by the EFTA."  *Bank of Am.*, 309 F.3d at

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1   565.  The Ninth Circuit reached this decision by comparing the EFTA to another federal statute,

2   the ATM Fee Reform Act of 1999.  The ATM Fee Reform Act required "ATM operators who

3   impose a fee [to] notify customers," while the EFTA was silent on fees.  *Id.*  The court thus

4   concluded that "Congress recognized that ATM operators can charge fees" but declined to

5   include any prohibition on the EFTA.  *Id.*  "Therefore, the prohibition of ATM fees is not the type

6   of consumer protection measure contemplated by the EFTA."  *Id.*

7        Here, too, the Court can look to another federal statute—the NBA—to conclude that the

8   regulation of stop-payment fees "is not the type of consumer protection measure contemplated by

9   the EFTA."  *Id.*  Through the NBA and its implementing regulations, Congress and the OCC give

10   national banks the authority to establish fees related to the business of banking.  Under the NBA

11   and the OCC's regulations, "[t]he establishment of non-interest charges and fees, their amounts,

12   and the method of calculating them are business decisions to be made by each bank, in its

13   discretion, according to sound banking judgment."  12 C.F.R. § 7.4002(b)(2); *see also* 12 U.S.C.

14   § 24 (Seventh) (giving national banks the power "[t]o exercise . . . all such incidental powers as

15   shall be necessary to carry on the business of banking; by . . . receiving deposits").  The power to

16   set and charge fees is "an inherent element of [national banks'] authority to conduct the business

17   of banking."  Office of the Comptroller of the Currency, Interpretive Letter No. 1094, 2008 WL

18   1775103, at *1 n.1 (Feb. 27, 2008).  Congress knows that banks charge fees, and it knows how to

19   circumscribe them.  *See, e.g.*, 12 U.S.C. § 2610 (prohibiting the charging of fees for preparing

20   Truth in Lending Act disclosures).  But it declined to include any limitation or prohibition on fees

21   in the EFTA.

22        Plaintiffs attempt to distinguish *Bank of Am. v. City & County of San Francisco* by

23   pointing out that the fees at issue there were ATM fees rather than stop-payment fees (Opp. 18),

24   but this distinction is immaterial.  In analyzing the EFTA's legislative history and concluding that

25   bank fees were outside the EFTA's purview, the Ninth Circuit reasoned that "[t]he EFTA was

26   enacted to prevent fraud, embezzlement, and unauthorized disclosure in electronic fund transfers,

27   ***not to regulate service fees charged by financial institutions***."  *Bank of Am.*, 309 F.3d at 564

28   (emphasis added); *see also Kashanchi v. Texas Commerce Med. Bank, N.A.*, 703 F.2d 936, 940

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1   (5th Cir. 1983) (analyzing legislative history of the EFTA and concluding the EFTA was enacted

2   to regulate "fraud, embezzlement, and unauthorized use").  The Ninth Circuit's analysis of the

3   EFTA's legislative history was not limited to whether the EFTA was intended to regulate ATM

4   fees; instead, the court concluded that financial institutions' service fees generally were outside

5   the statute's scope.

6        In a final attempt to undermine the Ninth Circuit's thorough analysis of the EFTA's

7   legislative history, plaintiffs cite a handful of state-court decisions—all of which are at least 50

8   years old and predate the EFTA's enactment—for the undisputed proposition that consumers

9   have a right to stop payment.  (*See* Opp. 8–9.)  But those decisions are inapposite because

10  whether plaintiffs have a right to stop payment is not at issue in this action.  The crux of

11  plaintiffs' complaint is whether the EFTA prohibits stop-payment fees that national banks have

12  the power to impose under the NBA, where the Ninth Circuit has already held that the EFTA was

13  not enacted to regulate fees charged by financial institutions.  The Court should therefore follow

14  the reasoned decision of *Bank of Am. v. City & County of San Francisco* and dismiss count one

15  with prejudice.

16      **B.     This Court Does Not Have Jurisdiction to Adjudicate Compliance with an
             OCC Regulation.**

17

18       In the alternative, as part of count two, plaintiffs argue that, "the EFTA prohibits banks

19  from charging fees that bear no relationship to the actual costs of processing cancellations."

20  (Opp. at 11.)  Plaintiffs' proposed fee cap comes from OCC regulations that, as the Ninth Circuit

21  has held, only the OCC can enforce.  *Deming*, 528 F. App'x at 778 (holding that "a national

22  bank's adherence to OCC regulations is within the exclusive purview of the OCC.").  Thus, as

23  this Court recognized during the hearing on BANA's motion to dismiss the SAC, asking this

24  Court to determine the reasonableness of a bank's fee "has no support in the law anywhere."

25  (Hr'g Tr. 27, Nov. 1, 2018.)

26       Plaintiffs argue that they "are not asking the Court to engage in fee setting" and contend

27  that they do not assert a "violation of . . . any OCC regulations."  (Opp. 23.)  But that is precisely

28  what Plaintiffs are trying to do here.  For example, both their opposition and the TAC cite 12

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1   C.F.R. § 7.4002(b)(2)—the OCC regulation that provides banks discretion to set fees.  That

2   regulation is the sole authority plaintiffs cite when asking the Court to require that banking fees

3   be capped at the cost of providing a service.  (*See* TAC ¶ 10; Opp. at 11.)  But Article III courts

4   lack jurisdiction to decide depository fee limitations under 12 C.F.R. § 7.4002(b)(2), as the Ninth

5   Circuit has repeatedly held.  *Deming*, 528 F. App'x at 778*; Martinez v. Wells Fargo Home*

6   *Mortg., Inc*., 598 F.3d 549, 556 n.8 (9th Cir. 2010); *accord Gutierrez v. Wells Fargo Bank, NA*,

7   704 F.3d 712, 724–25 (9th Cir. 2012) (whether a national bank "complied with the safe and sound

8   banking principles under § 7.4002(b)(2) is an inquiry that falls squarely within the OCC's

9   supervisory powers" and cannot be decided by district court).

10         Attempting to distinguish this binding Ninth Circuit authority, plaintiffs reach outside the

11   context of banking fees and try to analogize judicial authority in the context of enforcing

12   constitutional rights and anti-discrimination laws.  First, plaintiffs cite cases analyzing

13   fundamental constitutional rights, arguing that because courts can determine whether a state actor

14   has violated the Constitution, this Court can determine whether a bank's fees violate OCC

15   regulations.  (Opp. 11.)  But plaintiffs' analogy does not apply: Congress has not vested exclusive

16   authority to review government restrictions on constitutional rights in an Article I regulatory

17   agency.  On the other hand, as the Ninth Circuit has explained, Congress determined that "a

18   national bank's adherence to OCC regulations is within the exclusive purview of the OCC."

19   *Deming*, 528 F. App'x at 778.

20         Second, plaintiffs cite *City of Miami v. Bank of America Corp.*, to argue that because

21   courts may decide whether loans violate anti-discrimination principles in the Fair Housing Act,

22   this Court may decide whether BANA's stop-payment fee complies with OCC regulations.  (Opp.

23   at 11 (citing *City of Miami v. Bank of Am. Corp*., 800 F.3d 1262, 1266 (11th Cir. 2015), *vacated*

24   *and remanded*, *Bank of Am. Corp. v. City of Miami, Fla*., 137 S. Ct. 1296 (2017).)  But again, as

25   plaintiffs acknowledge, *City of Miami* did not involve an agency with exclusive authority to

26   regulate the subject of the case.  Unlike a challenge to the ***application*** of a fee, the challenge to

27   the ***amount*** of a fee "is fruitless because the regulation of a national bank's adherence to OCC

28   regulations is within the exclusive purview of the OCC."  *Martinez*, 598 F.3d at 556 n.8.  The

DEF. BANA'S REPLY IN SUPPORT OF
MOT. TO DISMISS THIRD AM. COMPL.
5:18-CV-01375-BLF

1    Court should thus dismiss count two of the TAC with prejudice.

2           **C.    Nothing in BANA's Deposit Agreement Forced Plaintiffs to Waive Their**
             **Right to Place a Stop-Payment Request.**
3

4           Plaintiffs' third count "asserts that the EFTA prohibits fees that impede and hinder a

5    consumer's ability to exercise his right to cancel an EFT." (Opp. 4.)  In support of their claim

6    that BANA's contracted-for fee violates the EFTA's anti-waiver provision, plaintiffs rely

7    extensively on *Simone v. M & M Fitness LLC*, as they did in their opposition to BANA's previous

8    motion to dismiss.  2017 WL 1318012 at *3.  Plaintiffs claim that the *Simone* court concluded

9    that under section 1693e, "policies that have the effect of hindering the right to cancel" an

10   electronic fund transfer are prohibited by the EFTA.  (Opp. at 12.)  But that is not an accurate

11   description of the case and, as this Court noted at the hearing on BANA's motion to dismiss the

12   SAC, *Simone* is not on point.  (Hr'g Tr. 22, Nov. 1, 2018 (observing that *Simone* "is a different

13   factual circumstance" and not analogous to the case at bar).)  The gym-membership agreement's

14   notice requirements in *Simone* expressly contradicted the EFTA's requirements.  *See Simone*,

15   2017 WL 1318012 at *3.  Here, there is no conflict between BANA's deposit agreement and the

16   EFTA.

17          Moreover, section 1693l, "speaks to the non-waiver of substantive rights and remedies

18   afforded by the EFTA."  *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1345 (M.D. Fla. 2016).

19   Absent interference with a ***substantive*** right or remedy, "the anti-waiver provision in § 1693l does

20   not apply."  *Id*.; *see also Williams v. Champs Auto Sales, Inc*., 2014 WL 6886546, at *1 (E.D.

21   Mich. Dec. 4, 2014) (finding that because the EFTA provision at issue did not mandate "a

22   substantive right to access federal courts to bring [EFTA] claims," arbitration provision did not

23   constitute a waiver as contemplated by § 1693l).  While section 1693e gives consumers the right

24   to stop electronic payments under specific circumstances, the statute does not grant a substantive

25   right to bank without service fees.  Thus, stop-payment fees do not amount to a waiver of any

26   substantive EFTA right and do not implicate section 1693l.  Similarly, the provision of BANA's

27   deposit agreement that instructs consumers to "notify the payee that [they] have withdrawn [their]

28   authorization for any preauthorized (recurring) transaction," (TAC ¶ 38), does not implicate a

1    consumer's right to stop payment because, as this Court observed, the notification does not need

2    to happen "before the stop occurs." (Hr'g Tr. 7, Nov. 1, 2018.) And plaintiffs never allege that it

3    does.

4         Thus, neither the terms in BANA's deposit agreement nor the stop-payment fee itself

5    forced plaintiffs to waive any right under the EFTA. The fact that both plaintiffs actually

6    exercised their right to stop payment confirms that plaintiffs never waived any rights. The Court

7    should dismiss count three of the TAC with prejudice.

8    **III.    MOODY HAS NOT PLEADED AN INDIVIDUAL EFTA CLAIM BASED ON AN
             ALLEGED FAILURE TO HONOR A STOP-PAYMENT ORDER.**
9

10        Moody has not pleaded a cognizable individual EFTA claim based on the alleged failure

11   to honor his stop-payment request. Under the plain language of section 1693h(a), which governs

12   here, a bank may only be liable for its alleged "failure to stop payment of a preauthorized transfer

13   from a consumer's account" when the consumer "instructed [the financial institution] to do so ***in***

14   ***accordance with the terms and conditions of the account***." 15 U.S.C. § 1693h(a)(3) (emphasis

15   added).

16        Plaintiffs contend that Moody adequately alleges a violation because "he made his stop-

17   payment order to the best of his ability." (Opp. 24.) The law requires more. "[I]nstruct[ing]" a

18   financial institution to stop payment "in accordance with the terms and conditions of the account"

19   is an element of a section 1693h claim, so a plaintiff must allege "what, if any, instructions

20   Plaintiff gave []." *Farrish v. Navy Fed. Credit Union*, 2017 WL 4418416, at *5 (D. Md. Oct. 5,

21   2017). Under the terms of Moody's deposit agreement, he needed to provide specific information

22   about the payment he wished to stop. This information is necessary to enable BANA to

23   distinguish between a payment that a customer wants to cancel, on the one hand, and payments

24   that the customer wants to continue, on the other. But nowhere in the TAC does Moody allege,

25   even in general terms, that he made his request pursuant to the terms and conditions of his

26   account. He does not allege that his stop-payment request matched the amount of the payment he

27   wished to stop. He does not allege that he provided BANA with the correct payee information.

28   BANA raised this argument in its prior motion to dismiss, and all that plaintiffs added was an

10

1    allegation that Moody did his best.  Plaintiffs' failure to allege compliance with the terms, as

2    opposed to attempted compliance, is an inherent concession that Moody's request did not comply

3    with the contractual requirements.  If Moody misidentified the payee or the amount of the

4    recurring electronic funds transfer, it would not be surprising if BANA was unable to implement

5    the request according to Moody's unstated desire.  And it most certainly is not an EFTA violation

6    by BANA.

7         Despite the Court giving plaintiffs multiple opportunities to amend their complaint, the

8    TAC still includes no facts from which the Court could infer that Moody sufficiently "instructed

9    [BANA]" in December 2017 to stop his January 3, 2018, payment "in accordance with the terms

10   and conditions of the account."  15 U.S.C. § 1693h(a)(3).  Without alleging these basic facts,

11   Moody has not alleged that the January 3, 2018 payment he challenges was in fact an

12   "unauthorized" electronic funds transfer within the meaning of the EFTA.  *See* 15 U.S.C. §

13   1693h(a)(3).  Thus, the Court should dismiss count seven of the TAC with prejudice.

14   **IV.    FOREMAN'S UCL CLAIMS CHALLENGING STOP-PAYMENT FEES SHOULD
         BE DISMISSED.**

15

16        **A.    The National Bank Act Preempts Foreman's UCL Claims.**

17        Foreman cannot invoke the UCL in an attempt to restrict the checking-account fees that

18   BANA, a national bank, assesses because the NBA preempts such claims.  *Bank of Am.*, 309 F.3d

19   at 562; (*see also* Mot. 16–18.)  Specifically, the NBA preempts the application of state laws that

20   "impair significantly" powers incidental to the business of banking.  *Barnett Bank of Marion Cty.,*

21   *N.A. v. Nelson*, 517 U.S. 25, 33 (1996); *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007);

22   *see also Martinez*, 598 F.3d at 555 ("[S]tate laws that 'obstruct, impair, or condition a national

23   bank's ability to fully exercise its Federally authorized real estate lending powers' are

24   preempted.") (quoting 12 C.F.R. § 34.4(a)).  As the Ninth Circuit has made clear, state-law claims

25   seeking to restrict depository fees assessed by national banks are preempted because those claims

26   would significantly impair banks' ability to administer checking accounts and set non-interest

27   charges and fees.  *See Martinez*, 598 F.3d at 556 (holding that the NBA preempted UCL claim

28   based on allegedly excessive fees because "[u]nder 12 C.F.R. § 7.4002(b)(2), these are business

1   decisions to be made by each bank"); *Bank of Am.*, 309 F.3d at 564 (holding that the NBA and §

2   7.4002(b)(2) preempt restrictions on ATM fees).

3          Plaintiffs do not meaningfully dispute this proposition.  Instead, in a single sentence they

4   argue that the EFTA's anti-waiver provision saves their UCL claims from NBA preemption.

5   (Opp. 25.)  But, as with their EFTA claims, binding precedent precludes plaintiffs' position.  The

6   Ninth Circuit has expressly held that the EFTA's anti-preemption provision ***does not*** save state

7   laws from NBA preemption.  *Bank of Am.*, 309 F.3d at 565 (observing that because "the EFTA's

8   anti-preemption provision is limited to the EFTA," it does not apply to "preemption by . . . the

9   National Bank Act").  The Eighth Circuit has reached the same conclusion.  *Bank One, Utah v.*

10  *Guttau*, 190 F.3d 844, 850 (8th Cir. 1999) (holding that the EFTA's "anti-preemption provision is

11  specifically limited to the provisions of the federal EFTA, and nothing therein grants the states

12  any additional authority to regulate national banks").  Accordingly, plaintiff's position is wrong

13  as a matter of law, and the Court should rule that plaintiff Foreman's UCL claims are preempted

14  by the NBA.

15         **B.      Foreman Cannot State a UCL "Unlawful" Claim Based on Stop-payment**
               **Fees Because He Has Not Pleaded a Predicate EFTA Violation.**
16

17         Foreman's claims under the UCL's "unlawful" prong in counts four through six

18  necessarily fail because each of the three claims is predicated on an EFTA claim that fails as a

19  matter of law.  Without a predicate violation, Foreman cannot state an "unlawful" claim under the

20  UCL since the "unlawful" prong "borrows violations of other laws and treats them as unlawful

21  practices that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns,*

22  *Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation omitted); *see also*

23  *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1678 (2017) (holding that the UCL claim failed

24  where it depended on an infirm federal claim); *Renick v. Dun & Bradstreet Receivable Mgmt.*

25  *Servs.*, 290 F.3d 1055, 1058 (9th Cir. 2002) (affirming summary judgment in defendant's favor of

26  the UCL claim where a predicate FDCPA claim failed as a matter of law); *Ingels v. Westwood*

27  *One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable

28  under § 17200 for committing 'unlawful business practices' without having violated another

DEF. BANA'S REPLY IN SUPPORT OF
                                                                    MOT. TO DISMISS THIRD AM. COMPL.
                                                                    5:18-CV-01375-BLF

1    law.")  (internal quotation omitted).  Here, Foreman bases each UCL "unlawful" claim on a

2    purported EFTA violation.  Because Foreman has not stated an EFTA claim, *see supra* Sections

3    IIA–IIC, his derivative claim under the UCL's "unlawful" prong must be dismissed.  *See, e.g.*,

4    *Renick*, 290 F.3d at 1057.

5                                      C**ONCLUSION**

6           Each of plaintiffs' claims fail for multiple, independent reasons.  As a result, BANA

7    respectfully requests that plaintiffs' claims be dismissed with prejudice and without leave to file a

8    fourth amended complaint.

9           Dated:  April 19, 2019                    Respectfully submitted,

10                                                     MATTHEW W. CLOSE
                                                       DANIELLE N. OAKLEY
11                                                     BRITTANY ROGERS
                                                       O'MELVENY & MYERS LLP
12

13                                                     By:        /s/ *Danielle N. Oakley*
                                                                Danielle N. Oakley
14                                                     Attorneys for Defendant
                                                       Bank of America, N.A.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. BANA'S REPLY IN SUPPORT OF
                                                       MOT. TO DISMISS THIRD AM. COMPL.
                                                       5:18-CV-01375-BLF

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that a true and accurate copy of the foregoing was served

3 upon all counsel of record via the Court's CM/ECF Filing System this 19th day of April, 2019.

4

5

6                                                    /s/ *Danielle N. Oakley*

7                                                    Danielle N. Oakley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
5:18-CV-01375-BLF